**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **LAVAL NOLAN SULLIVAN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-659** |
| **ORLEANS PARISH PRISON, ET AL.** | **SECTION "M"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A, and as applicable, 42 U.S.C. § 1997e(c)(1) and(2). On July 8, 2025, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff participating by conference telephone.[2]  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

I.    **Background**

    A.    **Complaint (ECF No. 5)**

Plaintiff Laval Nolan Sullivan ("Sullivan") is a pretrial detainee who was housed in the Orleans Parish Prison in New Orleans, Louisiana, at the time of the filing of this complaint.  ECF No. 5, ¶II, at 2.  Sullivan filed this *pro se* and *in forma pauperis* suit pursuant to 42 U.S.C. § 1983 against defendants Orleans Parish Prison ("OPP"), Deputy Heno, Captain Johnson, and Deputy Louis. *Id*. at 1; *id*., ¶III(B)-(D), at 4.  Sullivan alleges that on January 6, 2025, Deputy Louis came to pass out dinner on Pod 3 Charlie. *Id*. at 6. He claims that after he got his food, him and his

---

[1] 766 F.2d 179 (5th Cir. 1985).  The purpose of the *Spears* Hearing is to ascertain what the prisoner alleges occurred and the legal basis for the claims.  The information received is considered an amendment to the complaint or a more definite statement under Fed. R. Civ. Proc. 12(e).  *Wilson v. Barrientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2] ECF No. 9. Plaintiff was sworn before testifying and the hearing was electronically recorded.

cellmate put their hands inside the trap and were trying to talk to Deputy Louis. Sullivan states that Deputy Louis then slammed his fingers in the trap. He claims it brought tears to his eyes and his hand and fingers were swollen. Sullivan further alleges that Deputy Louis then bent and snapped his cellmate's arm. Sullivan states he tried to get Deputy Louis to take him and his cellmate to medical. He claims he kicked the door and screamed Deputy Louis's name but was ignored. When the night deputy came, Deputy Heno, Sullivan claims he informed him he was in pain and felt like his fingers were broken. He further alleges that Deputy Heno said he would tell someone, but never did.

Later that night after medicine pass, Sullivan states he believes Deputy Heno purposefully left him and his cellmate's cell open. He claims his cellmate walked out of the cell to go talk to a friend. Sullivan states he ran out of the cell to open a few friends' trap doors. He further alleges that Captain Johnson came into the pod screaming. *Id*. at 7. Sullivan claims he got scared and told Captain Johnson he was about to go back in his cell. As he was walking to his cell, he states that Deputy Heno held him until Captain Johnson caught up to him.

Next, Sullivan alleges that Captain Johnson grabbed him by the neck, grabbed his jumper collar, and punched him in the face. When he tried to defend himself, Sullivan claims that Deputy Heno began to punch him in his face. Sullivan further states that he "balled up" to cover himself and the Captain and Deputy continued to hit him on the head and neck which busted his left eye open. He claims he was also maced in his eyes and mouth. Sullivan further alleges that he was slammed down with their knees on his back, making him unable to breathe. Afterwards, Sullivan states he was in a great amount of pain, was left with mace all over his face, neck, and chest with no shower, vomited in his sleep, and had a broken eye socket.

As relief, Sullivan seeks compensatory damages for the injuries sustained, personal property that was taken from him, and requests the persons involved be held accountable. *Id.*, ¶V, at 5.

**B.    *Spears* Hearing**

In contrast to his complaint, during the *Spears* hearing, Sullivan testified that on January 1, 2025, a cellmate was injured by the conduct of a deputy. He stated his cell was accidentally left open by Deputy Heno when deputies went to medical for the other inmate. Sullivan testified that because of the incident with the other inmate the dorm was on lockdown. He further stated that while the dorm was on lockdown, since his cell was left open, he left his cell and began walking around the tier to talk to his friends.

While up the stairs on a different level of the tier from where his cell was located, Sullivan stated he was seen by deputies and given a command to get back in his cell. He testified that as he was coming down the stairs, Deputy Heno was at the bottom of the stairs and grabbed him and held onto him. While Deputy Heno was holding him, Sullivan testified that Captain Johnson caught up to them. Sullivan testified that he then yanked away from Deputy Heno and pushed the deputy off of him. He further stated that after he shoved Deputy Heno, Captain Johnson grabbed his shirt, man handled him and hit him. When asked if Deputy Heno was holding him when Captain Johnson hit him, Sullivan stated that Deputy Heno was not holding him. Sullivan further testified that during the altercation with Captain Johnson, Deputy Heno poked him in the eye from behind.

Sullivan further testified that earlier that same day, Deputy Louis smashed his fingers in the trap door and bent his cellmate's arm. He stated that Deputy Louis instructed him and his cellmate to close their trap door. Sullivan testified that him and his cellmate refused to close the trap door. He stated that Deputy Louis then went to close the trap door himself, and in the process

3

of the deputy closing the door, he smashed Sullivan's fingers in the trap and bent his cellmate's arm.

When asked if he requested medical care for his injuries from the incident with Deputy Heno and Captain Johnson or the incident with Deputy Louis, Sullivan stated he did not. He further testified he was not seen by a nurse as he did not make any sick calls. Sullivan stated the only action he took was filing a grievance pertaining to each incident. Sullivan did not testify to any short or long-term injuries he suffered due to either incident. When asked what specific relief he is requesting as a result of the incidents, Sullivan refused to answer and then stated he would submit on what was listed in his pleadings.

## II.    <u>Statutory Frivolousness Review</u>

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous.  The Court has broad discretion in determining the frivolous nature of the complaint.  *See Cay v. Estelle*, 789 F.2d 318, 325 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993).  However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous when it lacks an arguable basis either in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998).  "A [claim] lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott*, 157 F.3d 882, 889 (5th Cir. 1998)).  It lacks an arguable factual basis only if the facts alleged are "clearly

4

baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (citing *Neitzke*, 490 U.S. at 327-28). Thus, the Court must determine whether plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

## III.    Discussion

### A.    OPP is Not a Proper Defendant

Sullivan named OPP as a defendant, but it is not a proper defendant for purposes of § 1983. A plaintiff bringing a § 1983 complaint is required to identify both a constitutional violation and the responsible person acting under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978). OPP, however, is not recognized as a "person" within the meaning of § 1983. *See Douglas v. Gusman*, 567 F. Supp. 2d 877, 892 (E.D. La. 2008) (Order adopting attached Report and Recommendation).

In Louisiana, a jail facility is not an entity "legally empowered to do" anything independent of either the responsible parish officials or the parish sheriff. *Roberts v. Sewerage and Water Bd. of New Orleans*, 634 So. 2d 341, 347 (La. 1994). Because a jail is not a juridical entity under state law, "a prison or jail or its administrative departments are not entities that can be sued under Section 1983 . . ." and jails "are not persons for purposes of suit under Section 1983 as the statute and case law define that term." *Douglas*, 567 F. Supp. 2d at 892; *see* Fed. R. Civ. P. 17(b). As one division of this Court has noted, a parish jail is "not an entity, but a building." *See Jones v. St. Tammany Parish Jail*, 4 F. Supp.2d 606, 613 (E.D. La. 1998) (dismissing with prejudice the St. Tammany Parish Jail as an improper defendant); *see also Kerr v. Orleans Parish Sheriff's Office Prison*, No. 15-0746, 2015 WL 4755174, at *1 (E.D. La. Aug. 10, 2015).

Consequently, Sullivan's claims against OPP should be dismissed under 28 U.S.C. § 1915 and § 1915A as frivolous and for failure to state a claim for which relief can be granted.

**B.    <u>Excessive Force</u>**

Sullivan named Deputy Heno, Captain Johnson, and Deputy Louis as defendants claiming the incident on the tier and the incident with his trap door were unreasonable uses of force. Broadly construing his complaint, Sullivan claims that Deputy Heno and Captain Johnson overstepped their authority when his eye was busted. However, Sullivan claims that he pulled away from and shoved Deputy Heno when they were trying to return him to his cell after he was walking around on lockdown. Sullivan also claims that Deputy Louis overstepped his authority by slamming his fingers in the trap door even though he willfully disobeyed the Deputy's commands to close the trap door.

The use of force against a pretrial detainee is "excessive" and a violation of the Fourteenth Amendment when the use of force was objectively unreasonable. *Fairchild v. Coryell Cnty., Tex.*, 40 F.4th 359, 362 (5th Cir. 2022) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015)); *Andrew v. St. Tammany Par.*, No. 15-2105, 2016 WL 447680, at *7 (E.D. La. Jan. 15, 2016) (citing *Brown v. Gusman*, No. 15-1491, 2015 WL 6827260, at *3-4 (E.D. La. Nov. 6, 2015)), *report and recommendation adopted by* 2016 WL 430455, at *1 (E.D. La. Feb. 4, 2016). The Court may consider several factors to determine the reasonableness of the force used, including the non-exhaustive list provided in *Kingsley*: "[(1)] the relationship between the need for the use of force and the amount of force used; [(2)] the extent of the plaintiff's injury; [(3)] any effort made by the officer to temper or to limit the amount of force; [(4)] the severity of the security problem at issue; [(5)] the threat reasonably perceived by the officer; and [(6)] whether the plaintiff was actively resisting." *Kingsley*, 576 U.S. at 397. The court is to look only to the objective reasonableness of

the force without regard to the officer's underlying intent or motivation. *Gonzalez v. Seal*, No. 13-34, 2013 WL 6244183, at *8 (E.D. La. Dec. 3, 2013) (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)).

"[A] pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Kingsley*, 576 U.S. at 398 (citing *Bell v. Wolfish*, 441 U.S. 520, 540 (1979); *Block v. Rutherford*, 468 U.S. 576, 585-86 (1984)); *see also Andrew*, 2016 WL 447680, at *8 (citing *Thompson v. Beasley*, 309 F.R.D. 236, 247 (N.D. Miss. July 13, 2015)) (discussing that the inquiry post-*Kingsley* is "whether, from an objective point of view [defendant's] actions were rationally related to a legitimate, nonpunitive governmental purpose and whether his actions were excessive in relation to that purpose.").

"A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley*, 576 U.S. at 397 (quoting *Graham*, 490 U.S. at 396). Thus, "not . . . every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). In determining reasonableness, the Court must consider that officers "are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. In the prison setting, a Court must further take into account policies and practices that are deemed necessary by jail officials for the legitimate interests of preserving internal order, discipline, and institutional security. *Kingsley*, 576 U.S. 397 (citing *Bell*, 441 U.S. at 540 & 547). However, a claim that a jail official failed to follow jail policy does not alone state a cognizable

constitutional claim. *Samford v. Dretke*, 562 F.3d 674, 681 (5th Cir. 2009) ("[A] prison official's failure to follow the prison's own policies does not, itself, result in a constitutional violation.").

Using the factors set forth above, Sullivan's claim of excessive force against defendants is frivolous. As to the incident with Deputy Heno and Captain Johnson, Sullivan averred in the *Spears* hearing that he was walking around on a different tier level in the jail during lockdown. He also conceded that he actively and intentionally defied orders to return to his cell by pulling away from and shoving Deputy Heno when the deputies attempted to return him to his cell.

As to the incident with Deputy Louis, Sullivan further averred that he defied orders to close the trap door of his cell and deliberately placed his hand into the trap door in an attempt to prevent it from being closed and securing the cell. When Sullivan continued to refuse to close the trap door and placed his hand into the door, Deputy Louis shut the door which resulted in his fingers being smashed. Sullivan also conceded that he requested no medical care for either incident and does not claim he suffered any short-term or long-term injuries to his hand or eye besides discomfort.

Under these facts described by Sullivan, the use of force by Deputy Heno and Captain Johnson was reasonable and warranted to restore discipline and secure the pod after Sullivan initiated a physical altercation with deputies as he was walking around the tier when he was expressly instructed to be in his cell because of the lockdown. Similarly, the use of force by Deputy Louis was reasonable and warranted to restore discipline and secure the cell while Sullivan remained in open defiance of his orders to shut the trap door. "Ensuring security and order at the institution is a permissible nonpunitive objective, whether the facility houses pretrial detainees, convicted inmates, or both." *Bell*, 441 U.S. at 561.

8

When a pretrial detainee, like Sullivan, refuses to comply with a guard's repeated orders, the use of some degree of force by officers is justified to maintain or restore discipline. *See Sanchez v. Griffis*, 569 F. Supp. 3d 496, 511 (W.D. Tex. Nov. 2, 2021); *see also Schneider v. Kaelin*, No. C-12-233, 2013 WL 1867611, at *5 (S.D. Tex. April 21, 2013) (observing that "[t]he Fifth Circuit has consistently found no excessive force where prison officials employ force against inmates refusing to comply with orders") (citations omitted). The use of force by Deputy Heno and Captain Johnson was used to regain control of situation after Sullivan was out of his cell on lockdown and after he resisted when deputies attempted to return him to his cell. Likewise, the force used by Deputy Louis, after ordering Sullivan to close the trap door, was used in an effort to secure Sullivan's cell. In both instances, the force did not continue beyond the point that discipline was restored.

Thus, under the foregoing precedent, Sullivan's continued refusal to obey Deputy Heno, Captain Johnson, and Deputy Louis was a reasonable basis for the deputies to determine that additional force was necessary to obtain Sullivan's compliance in each instance. *See Darden v. City of Fort Worth, Tex.*, 880 F.3d 722, 729 (5th Cir. 2018) (jail officials may consider a pretrial detainee's refusal to comply with instructions when assessing whether physical force "is needed to effectuate the [detainee's] compliance.") (quoting *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009)).[3] Given that Sullivan escalated the situation with Deputy Heno and Captain Johnson by pulling away from and shoving Deputy Heno, and defiantly disobeyed direct orders by Deputy

---

[3] *See also*, *Rios v. McBain*, No. 04CV84, 2005 WL 1026192, at *7 (E.D. Tex. Apr. 28, 2005) ("open defiance of orders plainly poses a threat to the security of the institution, regardless of whether or not the defiance is emanating from within a locked cell"), *report and recommendation adopted by* 2005 WL 1026192 (E.D. Tex. Apr. 28, 2005); *Minix v. Blevins*, No. 06-306, 2007 WL 1217883, at *24 (E.D. Tex. Apr. 23, 2007) (even when a prisoner believes an order to be "unjustified and improper, this does not give him the right to disobey them at his whim").

Louis, the escalation and use of physical force was the only reasonable and necessary means to gain Sullivan's compliance and for the deputies to gain control sufficient to either reinstate discipline on the tier or secure the cell.

Therefore, Sullivan has not alleged that Deputy Heno, Captain Johnson, or Deputy Louis's actions were unreasonable or unnecessary to restore order in the situations he himself described. As such, Sullivan's § 1983 excessive force claims against Deputy Heno, Captain Johnson, and Deputy Louis must be dismissed pursuant to 28 U.S.C. § 1915 and § 1915A, and as applicable, 42 U.S.C. § 1997e as frivolous and otherwise for failure to state a claim for which relief can be granted.

## IV. RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff Laval Nolan Sullivan's 42 U.S.C. § 1983 claims against defendants Orleans Parish Prison, Deputy Heno, Captain Johnson, and Deputy Louis be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e) and § 1915A, and, as applicable, 42 U.S.C. § 1997e, as frivolous and otherwise for failure to state a claim for which relief can be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will

result from a failure to object. *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[4]

New Orleans, Louisiana, this ____2nd____ day of January 2026.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[4] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.